## In re SEVEN BAR LAND & CATTLE COMPANY, Debtor.

### Bankruptcy No. 11–87–01408 MA.

United States Bankruptcy Court, D. New Mexico.

Nov. 10, 1988.

John P. Salazar, Albuquerque, N.M., for Seven Bar Land & Cattle Co.

Stan Hatch, Albuquerque, N.M., for John & Rolfe Black.

David Schiefferstein, Denver, Colo., Victoria A. Holt, Albuquerque, N.M., for Jane B. Roehl.

Walter L. Reardon, Albuquerque, N.M., Trustee.

Bill J. Sholer, Albuquerque, N.M., Trustee.

Anthony L. Romo, Albuquerque, N.M., for Albert & Mary Black.

Thomas J. Zimbrick, Albuquerque, N.M., for First Interstate.

Robert A. Jacobvitz, Albuquerque, N.M., for Coors Road Joint Venture.

P. Diane Webb, Albuquerque, N.M., Asst. U.S. Trustee.

Amanda J. Ashford, Albuquerque, N.M., for First Nat.

John F. Caffrey, Albuquerque, N.M., for Bill Black.

Bill Chappell, Jr., Albuquerque, N.M., for ABQ Development.

Michael Messina, Albuquerque, N.M., for Ramcor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for final hearing on Trustee's Report of Sale and Motion to Confirm Sale and the Response and Objection to Report of Sale and Motion to Confirm Sale filed by Jane Black Roehl ("Roehl"). Roehl objects to the acceptance or approval of the bid of ABQ Development Company to purchase certain real property described hereafter as "Lot 1".

FACTS

On November 18, 1987 this Court entered an Order Approving Settlement Agreement executed by the three partners in Seven Bar Land & Cattle Company, in both their individual and general partner capacities, and their spouses. In summary, the agreement released all prior claims by and between the parties to that date, dismissed pending state court proceedings, agreed to an order of relief under chapter 11 of Title 11 and agreed to the appointment of a trustee.

Paragraph 6 of that agreement stated in relevant part:

Within six months after the entry of the order for relief, unless the parties and the trustee agree that additional time is needed, the trustee will liquidate all assets of Seven Bar (including Seven Bar's partnership interests in all Second Tier Partnerships) as a single package, at a "live" auction, in a manner which the trustee determines to be appropriate to realize the maximum value to the parties. The trustee will accept the highest bid for cash, payable on the day.

Paragraph 7 provides, in part:

The trustee will have all of the powers of a chapter 11 trustee under the Bankruptcy Code, plus the power to sell the property of Seven Bar as set forth herein. The trustee will employ a firm of national stature and prominence to liquidate the assets of Seven Bar in accordance with the provisions of the Settlement Agreement. The fees of such firm will be negotiated by the trustee, and will be subject to Bankruptcy Court approval.

.     .     .     .     .

Although this agreement reflects the agreement of the paries with respect to the matters herein, and the parties agree not to take a position in the chapter 11 case contrary to the terms of this Settlement Agreement, all parties recognize that the trustee has the discretion to take such actions as he finds to be in the best interest of the estate.

The trustee filed a Motion to Extend Sale Date and Modify Conditions of Sale on May 13, 1988, seeking to extend the sale date to September 15, 1988 and asking authority to bid the property in parcels as opposed to a single unit. Roehl filed two memoranda in support of the trustee's motion. In these memoranda she repeatedly stated that the major premise of the settlement agreement was an auction. *See* Memorandum of May 26, 1988 at 2–4 ("The parties determined that a public sale of Seven Bar's assets, arranged and conducted by an independent third party, was required." "By providing for a live public sale conducted by an independent party, the Settlement Agreement

resolved the major point of contention among the partners." "The major premise ... was that Seven Bar should be liquidated through a fair sale ... This involved providing for a marketing effort designed to, by drawing national attention to the assets, bring sophisticated developers to the auction."), and 8 ("the main thrust ... is a fair, professionally prepared for and conducted, fully noticed public sale."). *See also* Memorandum of June 6, 1988 at 11 ("The fundamental principle ... is that the property be sold at a nationally-advertised public auction."). Thereafter the Court ordered that the auction date be extended to September 15, 1988 and also granted the trustee the authority to sell the assets in various parcels (Lots 1, 2 and 3) to maximize return to the estate.

The trustee conducted an auction on September 15, 1988, offering for sale the assets in seven different combinations. On September 23, 1988 the trustee filed his "Report of Sale and Motion to Confirm Sale" in which he reported his decision to accept the $7.5 million bid of ABQ Development Company on Lot 1 and the $10.5 million bids of John and Rolfe Black on Lots 2 and 3. The trustee recommended that the bids on Lots 2 and 3 be accepted by the Court. He made no recommendation with respect to the Court accepting the bid for Lot 1, but submitted it for approval as the best bid obtained. Roehl objects to the offer for Lot 1 only. No parties with standing objected to the sale of Lots 2 and 3. On October 6, 1988 the Court entered an order approving sale of Lots 2 and 3.

The Court held hearings on October 25 and November 4, 1988 on Roehl's objection. The trustee testified, as did two employees of Morgan Stanley (the "national stature" marketing firm agreed to by the parties and trustee), a local real estate developer, Dr. Hahn, the director of real estate consulting for the firm of Leventhal & Company, an appraiser, the president of ABQ Development Company, and an engineer that participated in the development of the master plan for the land subject to the offer. At the conclusion of the other testimony the trustee resumed the stand and testified that based upon the testimony presented he was now affirmatively recommending that the Court accept the bid and approve the sale.

Based on the testimony of the parties, the documents in evidence, and the pleadings on file the Court makes the following findings:

1. Lot 1 is approximately 513 acres in size. Of the 513 acres, the sector plan sets aside in excess of 60 acres for roads, drainage rights of way, and other non-income producing space.

2. The parties to the settlement agreement agreed that all assets would be liquidated at a " 'live' auction, in a manner which the trustee determined to be appropriate to realize the maximum value", and that the "trustee will accept the highest bid".

3. The trustee has recommended acceptance of the $7.5 million bid. That bid was the highest received.

4. The notice and advertisement gave reasonable notice on a national scale to the majority of developers who were likely to be interested in this property. Even if the auction were rescheduled it is not likely that any substantial additional interest would be shown or that additional bids would be presented.

5. The parties to the settlement agreement agreed to sell at auction.

6. The testimony was uncontroverted that the trustee is not likely to get more from another auction held in a short period of time.

7. Board minutes in evidence indicate that the $7.5 million offer was the maximum offer authorized by the board of directors of ABQ Development Company.

8. John and A. Rolfe Black are intimately familiar with the subject property due to their affiliation with the debtor. They bid on this parcel at the auction but did not outbid ABQ Development.

9. There was no testimony that convinced the Court that Lot 1 would sell at auction for more than $7.5 million.

10. If this offer is accepted all creditors can be paid in full and a dividend can be

paid to the partners. The issue before the Court is, substantially, only a dispute between parties to the settlement agreement.

11. The trustee has complied in all respects with the terms of the settlement agreement.

12. The value of Lot 1 is not in excess of $10 million.

CONCLUSIONS OF LAW

1. The trustee, after notice and hearing, may sell, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1).

2. Reasonable and adequate notice was given to all interested parties.

3. The proposed sale is economically reasonable and commercially justified.

4. The offered price is reasonable and fair.

5. All creditors can be paid in full upon sale. The partners can be paid their claims in full upon sale.

6. Had this sale been proposed as a plan of reorganization, no class or claim would be impaired, *see* 11 U.S.C. § 1124(3)(A), and the plan would be confirmable over Roehl's objection, *see* 11 U.S.C. § 1129(a)(8)(B).

7. The trustee's motion is well taken and should be granted. Roehl's objection is not well taken and should be denied.

An appropriate order shall enter.